1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10
11    JAWAID WAYNE NASIR,
              Plaintiff              Case No. 5:15-cv-01419-GJS
12
          v.                         **MEMORANDUM OPINION AND**
13                                   **ORDER**
      CAROLYN W. COLVIN, Acting
14    Commissioner of Social Security,
15              Defendant.
16
17                      **INTRODUCTION**
18          Plaintiff Jawain Wayne Nasir appeals from the Commissioner's denial of
19    Social Security Disability Benefits ("DIB").  Plaintiff alleges disability since
20    September 15, 2011, based on symptoms stemming from rheumatoid arthritis,
21    neuropathy, and a heart condition.  [Dkt. 16 ("Pltf.'s Mem.") at 2.]  An
22    Administrative Law Judge held two hearings, on May 29 and August 28, 2013, and,
23    by written decision, dated September 4, 2013, found Plaintiff not disabled.  [Dkt. 15,
24    Administrative Record ("AR") 21-32.]  Plaintiff appealed to the District Court, and
25    both parties consented to proceed before the undersigned Magistrate Judge.  [Dkt. 9,
26    10.]
27
28

Plaintiff presents three issues for review:  (1) whether substantial evidence supports the ALJ's finding at step two of the five-step inquiry[1] that neither of Plaintiff's alleged impairments of peripheral neuropathy or aortic insufficiency amount to legally severe impairments, and whether the ALJ's error, if any, is harmless; (2) whether the ALJ properly rejected the assessment of treating physician Dr. Mehta in assessing Plaintiff's Residual Functional Capacity ("RFC"); and (3) whether the ALJ had a clear and convincing reason supported by substantial evidence for finding Plaintiff's subjective complaints to be less than fully credible. [Pltf.'s Mem. at 1.]

In order to avoid repetition and for additional reasons, the Court addresses these issues in a different order than did the parties.  For the reasons set forth below, the Court AFFIRMS the decision of the ALJ.

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if:  (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920.  The steps are as follows:  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two; (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four; (4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five; (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.  20 C.F.R. § 416.920(b)-(g)(1).

2

1  *Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see*

2  *also Hoopai*, 499 F.3d at 1074.

3       Even if Plaintiff shows that the ALJ committed legal error, "[r]eversal on

4  account of error is not automatic, but requires a determination of prejudice."

5  *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012).  "[T]he burden of showing

6  that an error is harmful normally falls upon the party attacking the agency's

7  determination."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing

8  *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)).  "ALJ errors in social security cases

9  are harmless if they are 'inconsequential to the ultimate nondisability

10  determination[.]'"  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting

11  *Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

12  **BACKROUND FACTS**

13       Plaintiff claimed the following medically determinable impairments:

14  rheumatoid arthritis; asthma; hypertension; aortic valve disorder; carpal tunnel

15  syndrome; neurophathy; and fibromyalgia.  Out of these impairments, the ALJ

16  found only Plaintiff's rheumatoid arthritis and asthma to "more than minimally limit

17  the claimant's ability to work" and therefore treated them as severe impairments.

18  [AR 23.]  Plaintiff here challenges the ALJ's findings with respect to two of the six

19  remaining impairments, all of which he determined were non-severe.  [AR at 23-

20  24.]  The two that Plaintiff contends should have been found severe and specifically

21  taken into consideration in the determination of Plaintiff's RFC are his peripheral

22  neuropathy and aortic valve disorder.

23       The ALJ's step two summaries of each of these disorders are as follows:

24          [T]he medical evidence establishes that the claimant's
    medically determinable impairment of aortic valve

25          disorder causes only a slight abnormality that would have
    no more than a minimal effect on his ability to work.  In

26          September 2011, the claimant reported chest pain and
    shortness of breath.  A CT scan of the claimant's chest

27          was unremarkable.  Additional diagnostic studies of the

28

claimant's heart showed moderate aortic insufficiency, but normal left ventricular size and systolic function and ejection fraction at 60-65 percent.  Further, no aggressive treatment was recommended, such as surgery.  Notably, no medication was even prescribed for this condition.  Accordingly, the undersigned finds that the claimant's medically determinable impairment of aortic valve disorder is nonsevere.

[AR 23 (internal citations omitted).]

[T]he medical and other evidence establish that the claimant's medically determinable impairment of neuropathy causes only a slight abnormality that would have no more than a minimal effect on his ability to work.  The claimant was treated conservatively with medication for this condition.  He reported some improvement in his symptoms with this medication.  Therefore, this condition was being managed medically and should be amendable to proper control by adherence to recommended medical management and medication compliance.  Further, no aggressive treatment was recommended or anticipated for this condition.  Notably, despite allegations of lower extremity pain, the claimant does not utilize a cane or walker to alleviate these symptoms, indicating they are not as severe as alleged.  Accordingly, the undersigned finds the claimant's medically determinable impairment of neuropathy is nonsevere.

[*Id.* (internal citations omitted).]

The ALJ determined that Plaintiff had the RFC to perform light work, except as follows:

can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he can occasionally perform postural activities; he can frequently perform gross and fine manipulation with the bilaterally hands [sic]; and he should avoid concentrated exposure to extreme cold and vibrations, as well as fumes, odors, gases, dusts, and poor ventilation.

[AR 25.]

In determining Plaintiff's RFC, the ALJ summarized the medical evidence of records and opinions of Drs. Amy L. Kanner, a consultative internal medicine

4

specialist who opined that Plaintiff was capable of heavy work, Abid Hussain, who provided a "disability statement" in which he opined the Plaintiff was unable to work "due to persistent symptoms of chest pain and shortness of breath," Chandrakant Mehta, a treating rheumatologist who filled out a "Multiple Impairment Questionnaire," who also opined that Plaintiff had functional limitations that would preclude his performing any gainful work.  [AR 29-30 (internal citations omitted).]  The ALJ also summarized and relied on the opinions and functional capacity assessments of two state agency medical consultants, Drs. Haaland and Rose, both of whom reviewed Plaintiff's medical records (including records submitted by Drs. Hussain and Mehta) and concluded that Plaintiff was capable of light work.  [AR 29, 68-74, and 76-87.]  Relevant portions of the ALJ's analysis and the physicians' opinions will be discussed where applicable below.

Based on the above RFC, a vocational expert testified that there were sufficient light exertional level jobs available in the national economy that Plaintiff could perform.  [AR 65.]  The expert also testified that a claimant with Plaintiff's RFC could perform the full range of sedentary jobs as well.  [*Id.*]

## DISCUSSION

### I.  The ALJ's Determination that Plaintiff Was Not Fully Credible is Supported by At Least One Clear and Convincing Reason.

"Where, as here, an ALJ concludes that a claimant is not malingering, and that []he has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains

substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citations and quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

Plaintiff in this case claimed disabling pain from a number of different impairments. Plaintiff testified, for example, that rheumatoid arthritis caused pain all over, in his ankles, knees, hands, fingers, wrists elbows, shoulders, and hip. [AR 54.] On further questioning, he said the pain was worst in his hands, knees, and ankles. [*Id.*] The ALJ followed up by asking if he had been diagnosed with carpal tunnel syndrome, and whether his doctors had recommended surgery. [*Id.*]

> Q:     Did you ever have a nerve test done on your hands?
>
> A:     Yes.
>
> Q:     And they found carpel tunnel. Did they ever recommend you get a carpal tunnel release?
>
> A:     Yes.
>
> Q:     Did you have that done?

6

A:    No.

Q:    Why not?

A:    I had an appointment scheduled to get it done and then I just felt like I didn't want to get it done at that time.  I just was wanting to wait longer to see what will happen.

Q:    Well, how much longer are you going to wait, sir?  You're now 41 years of age [having alleged disability since he was 39].  And that's something that normally is a normal procedure and in only six weeks you're ready to go back to work.

A:    I just didn't feel comfortable getting it done.

[AR at 54-55.]

In considering claimant's credibility in his Notice of Decision, the ALJ noted that Plaintiff claimed that cortisone injections had failed to alleviate the pain in his wrists and that he was taking ibuprofen, but that while "surgery was recommended for carpal tunnel . . . he [claimant] admitted that he refused the surgery."  [AR 26.]

It is settled law that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to bear on a claimant's credibility.  *Tomasetti*, 533 F.3d at 1039; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  However, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."  *Carmickle,* 533 F.3d at 1162.  Here, the ALJ specifically questioned Plaintiff about his failure to seek treatment, and Plaintiff failed to offer any cogent explanation for that failure—he simply wanted to "wait and see."  That alone constitutes a clear and convincing reason for finding Plaintiff's claims of disabling conditions exaggerated.  The Court's analysis could end here, because the ALJ provided at least one clear and convincing reason,

based on substantial evidence, for discrediting Plaintiff's claims of debilitating pain and the severity of his symptoms.

The ALJ continued, however, with at least one additional reason that the Court finds properly supportive of his ultimate determination that Plaintiff was less than credible:

> Muscle atrophy is common side effect of prolonged and/or chronic pain due to lack of use of a muscle to avoid pain. There is no evidence of atrophy in the claimant's upper or lower extremities.  It can be inferred that, although the claimant experience some degree of pain in his ankles, knees, hands, fingers, wrists, elbows, shoulders, and hips, the pain has not altered his use of the muscles to an extent that has resulted in atrophy.  Moreover, the claimant alleged issues with balance, yet it was noted that he did not use an assistive device for ambulation and did not require one.

[AR 27 (citing AR 506-22).]  As the Commissioner points out [Dkt. 25 ("Resp. Br.") at 11-12], at least when it is one reason among others, lack of "evidence of disuse muscle atrophy" can be a legitimate reason to discount a claimant's allegations of severe pain.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001).[2]

Finally, although set forth as part of the ALJ's step two determination that Plaintiff's neuropathy was not severe, the ALJ also noted that "despite allegations of lower extremity pain, the claimant does not utilize a cane or walker to alleviate these symptoms, indicating they are not as severe as alleged."  The ALJ thus made the factual determination that Plaintiff's testimony about the severity of his pain was

---

[2] The Commissioner also cites *Gates v. Colvin*, 621 Fed. Appx. 457 (9th Cir. 2015) (unpublished), a case in which a panel of the Ninth Circuit found that "lack of muscle atrophy directly contradicted [plaintiff's] assertion of how much she moved on a daily basis," and that this was a sufficient reason for the ALJ to reject any limitations identified by a doctor that were based on the plaintiff's subjective complaints.  The case does, indeed, support Respondent's position, but is of limited value given both that it is unpublished and contains little reasoning to support its ultimate conclusion.

8

1  inconsistent with conservative treatment and Plaintiff's actions in not seeking or

2  using an assistive device.  [AR 23.]  *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

3  Cir. 2012) (proper for an ALJ to consider inconsistencies between a claimant's

4  testimony and conduct).

5        The Court concludes that the ALJ provided clear and convincing reasons,

6  supported by substantial evidence, for finding Plaintiff less than fully credible, and

7  therefore declines to remand based on this issue.[3]

8        **II. The ALJ Provided Specific and Legitimate Reasons for Rejecting Dr.**

9        **Mehta's Opinion That Plaintiff Had A More Restrictive RFC**

10        To reject the uncontradicted opinion of a treating physician, the ALJ must

11  provide clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

12  1995).  Where a treating physician's opinion is contradicted by another doctor's

13  opinion, an ALJ may reject the opinion if he provides "specific and legitimate

14  reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31;

15  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d

16  625, 632 (9th Cir. 2007).  "The ALJ can meet this burden by setting out a detailed

17  and thorough summary of the facts and conflicting clinical evidence, stating his

18  interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747,

19  751 (9th Cir. 1989) (internal citations and quotations omitted).

20        Plaintiff contends that the ALJ improperly rejected Dr. Mehta's assessment

21  that he had functional limitations that would preclude him from any gainful

22  employment.  [AR 30 (assigning "limited weight to this opinion").]  Dr. Mehta filled

23  out a Multiple Impairment Questionnaire in 2012 in which he indicated that Plaintiff

24  could only sit for three hours and stand/walk for one hour in an 8-hour workday.

25  _____

26  [3] The Court also notes that although the ALJ did not find Plaintiff fully credible, he
    nevertheless "generously considere[ed] Plaintiff's subjective complaints" in
27  determining Plaintiff's RFC, in fact finding that Plaintiff was only capable of light
    work when consultative physician Dr. Kanner opined that Plaintiff was capable of
28  heavy work.  [AR at 29.]

[AR 480.]  Dr. Mehta also opined that his patient could not do any pushing, pulling, kneeling, bending, or stooping, and that his description of the symptoms and limitations set forth in the questionnaire applied from as far back as April 2010.  [AR 484.]  Dr. Mehta submitted a letter in 2013 in support of a finding of disability that said much the same thing.  [AR 501.]

Dr. Mehta's opinion was contradicted by those of several other physicians.  Both state agency doctors found that Plaintiff was capable of light work, and one specifically noted that Dr. Mehta's more restrictive opinion was "consistent with overblown patient advocacy," considering, *inter alia*, that bilateral knee x-rays were normal, multiple exams found no synovitis (a clinical finding of swelling often seen with rheumatoid arthritis), there was no tenderness to palpitation, normal ROM of the joints, and no deformaties.  [AR 81.]  Given the conflicting opinions, the Court will uphold the ALJ's determination that Dr. Mehta's opinion is not entitled to substantial weight if the ALJ gave specific and legitimate reasons, based on substantial evidence, for rejecting it.  *Lester*, 81 F.3d at 830-31.

Here, the ALJ found that Dr. Mehta did not "provide medically acceptable clinical or diagnostic findings to support the overly restrictive functional assessment," and also that the opinion was "inconsistent with Dr. Mehta's own treatment records."  [AR 30.]  "The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were, in fact, disabled, and the doctor did not address this weakness."  [*Id.*]  As one of the state agency doctors also specifically concluded, Dr. Mehta's treatment records did not support his extreme findings.  [AR 81.]  In addition, two other impairment questionnaires filled out by specialist rheumatologists contained in the record found Plaintiff's degree of limitation to be only "moderate"—in other words, that he was "[s]ignificantly limited but not completely precluded" from completing a "competitive 8 hour workday."  [AR 545-47 (also finding Plaintiff could sit eight hours and stand/walk two hours in an eight-hour workday); AR 536-38 (finding that

1   Plaintiff could sit for five-to-six hours and stand/walk one-to-two hours in an eight-

2   hour workday).]

3          In light of Dr. Mehta's own notes and findings, as well as the record as a

4   whole, the Court finds that the ALJ gave specific and legitimate reasons supported

5   by substantial evidence in the record to reject Dr. Mehta's extremely restrictive

6   functional capacity assessment.  This issue therefore does not warrant remand.

7   **III.    Even Assuming The ALJ Erred In Making His Step Two**

8           **Determination That Plaintiff's Heart Condition and Neuropathy Were**

9           **Not Severe, Any Such Error Was Harmless**

10         The ALJ determined at step two of the 5-step analysis that several of

11  Plaintiff's diagnosable impairments were not severe.[4]  Plaintiff challenges two of

12  those determinations here:  that his aortic insufficiency and peripheral neuropathy

13  do not qualify as severe.  The Court need not address whether the ALJ erred in

14  making these findings, because the Court finds that any error was harmless.

15         At step two of the sequential evaluation process, a plaintiff has the burden to

16  present evidence of medical signs, symptoms, and laboratory findings that establish

17  a medically determinable physical or mental impairment that is severe and can be

18

19         [4] Plaintiff argues that the Court is limited to reviewing only the paragraphs found
    under the step two heading in determining whether the ALJ's step two analysis was
20  sound, and must ignore the vast amount of additional information and analysis
    contained in the ALJ's review of the medical record simply because it is contained
21  in the section of the ALJ's opinion reviewing the entire record and setting forth
    Plaintiff's RFC.  [*See, e.g.*, Dkt. 26 ("Pltf.'s Reply at 2-3").]  The Court finds this
22  argument absurd.  Plaintiff himself argues that the ALJ considered and improperly
    rejected Dr. Wallach's testimony—discussed in the RFC section—in determining
23  that his aortic insufficiency was not severe.  [Pltf.'s Reply at 3-4.]  *See also, e.g.*,
    *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (rejecting claimant's
24  argument that ALJ erred at step 3 by failing to discuss why he did not satisfy Listing
    because four-page "evaluation of the evidence" was "an adequate statement of the
25  foundations on which the ultimate factual conclusions are based" (internal quotation
    marks omitted)); *see also Lewis*, 236 F.3d 503, 513 (9th Cir. 2001) (ALJ must
26  discuss and evaluate evidence that supports step-three conclusion but need not do so
    under specific heading). But as already noted, the Court need not and does not
27  address whether the ALJ's step two determinations were all correct in this case
    because the Court finds any error harmless.

28

                                        11

expected to result in death or last for a continuous period of at least 12 months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); *see* 20 C.F.R. §§ 404.1520, 404.1509.  Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." *Ukolov*, 420 F.3d at 1004-05 (citing SSR 96-4p).  An impairment may never be found on the basis of the claimant's subjective symptoms alone. *Id.* at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").  An impairment or combination of impairments is "not severe" if the evidence established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (internal citation omitted).

Even if an ALJ errs by finding one or more of a plaintiff's alleged impairments nonsevere, such error is harmless if he nevertheless considers the impairments when determining the plaintiff's RFC at step four.  *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two harmless if ALJ fully evaluated claimant's medical condition in later steps of sequential evaluation process); *see also Stout,* 454 F.3d at 1055 (ALJ's error harmless when "inconsequential to the ultimate nondisability determination").

12

With respect to his aortic insufficiency, Plaintiff argues that the ALJ improperly rejected the testimony of medical advisor Dr. Wallach, a non-examining physician who opined that this condition precludes him from lifting more than 10 pounds because such action would put a strain on his heart. [Pltf's Br. At 2-3.] Dr. Wallach's telephonic testimony was rejected on-the-spot by the ALJ as "not conforming with the regulations and not conforming to the record based on any objective medical evidence that is in the medical record." [AR 44.] In his written opinion, the ALJ explained that he gave "little weight" to Dr. Wallach's opinion because it was "conclusory" and provided "very little explanation of the evidence relied on in forming his opinion." [AR 29.] The ALJ also noted that Dr. Wallach based his opinion "primarily on the claimant's subjective complaints rather than on any objective medical evidence of record." [*Id*.]

Although Plaintiff does not make his argument that the ALJ improperly rejected Dr. Wallach's testimony in the context of his RFC determination, the Court nevertheless considers whether the ALJ's reasons for rejecting Dr. Wallach's conclusions are specific and legitimate and based on substantial evidence. They are. Particularly given that the ALJ did not err in finding that Plaintiff's subjective complaints about the severity of his symptoms were less than credible, the ALJ was entitled to reject Dr. Wallach's opinion as lacking foundation. *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (ALJ may reject form reports that do not explain bases for their conclusions) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). And the medical opinions of several other physicians finding that Plaintiff was capable of at least light work provide substantial additional evidence to support the ALJ's conclusion.

Given that the ALJ discussed and properly discredited Dr. Wallach's opinion and considered the opinion of Dr. Hussain who also opined on Plaintiff's heart condition [AR 29-30], and in light of the other evidence referenced above (much of which also noted and rejected Plaintiff's heart condition as being severe or limiting

13

Plaintiff to the point where he could not work), it is clear that the ALJ considered any possible limitations from Plaintiff's aortic function in determining his RFC. Thus, even though the ALJ ultimately determined not to include a limitation specific to Plaintiff's heart function in Plaintiff's RFC, any step two error he may have committed is harmless.

Likewise, the Court finds that the ALJ's discussion of Plaintiff's peripheral neuropathy [AR 24, 26-27, 28], as well as the fact that Plaintiff's neuropathy symptoms appear to be subsumed by those one would suffer from rheumatoid arthritis[5]—an impairment that the ALJ did find to be severe—demonstrate that any step two error with respect to this impairment is harmless.  Thus, remand is not warranted for this reason, either.

## CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS HEREBY ORDERED.**

DATED: September 29, 2016

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

_____
[5] Plaintiff concedes that his own medical records do not clearly distinguish between his rheumatoid arthritis (which the ALJ did find to be severe) and peripheral neuropathy, and that both can cause pain and weakness in the extremities.  [Pltf.'s Mem. at 8.]